[Cite as *Haught v. U.S. Fid. & Guar. Co.*, 2011-Ohio-4994.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| RICHARD HAUGHT | C.A. No.     25489 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| U.S. FIDELITY & GUARANTY CO., et al. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellees | CASE No.     CV 2008 10 7282 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2011

BELFANCE, Presiding Judge.

{¶1}     Plaintiff-Appellant Richard S. Haught appeals from the judgment of the Summit County Court of Common Pleas. For the reasons set forth below, we reverse.

I.

{¶2}     Mr. Haught was the coach of Brownlee's Arsenal, an amateur youth baseball team. In July 2005, Mr. Haught was with the team at a baseball tournament at Springfield High School in Akron. Robert Abrams was operating a concession stand at the tournament on behalf of the Springfield Booster Club. While Mr. Haught was coaching a game, a dispute arose over parking fees being charged by the Springfield Booster club. After the game, and while Mr. Haught was conducting a team meeting, the dispute became physical and a member of Mr. Haught's team ran toward the mêlée. Mr. Haught left the team meeting in an attempt to diffuse or disperse the fight. During the argument, Mr. Abrams was fatally injured.

{¶3} In connection with Mr. Abrams' death, Mr. Haught was indicted on charges of involuntary manslaughter and assault; Mr. Haught was ultimately found guilty of assaulting Mr. Abrams. Amy Abrams, as the executrix of the estate of Mr. Abrams, filed a wrongful death action against multiple parties including Mr. Haught. Mr. Haught in turn filed this action seeking declaratory judgments that Defendant-Appellee United States Fidelity & Guaranty Company ("U.S. Fidelity"), St. Paul Fire & Marine Insurance Company ("St. Paul"), and Mutual of Omaha Insurance Company ("Mutual of Omaha") owed Mr. Haught a defense with respect to the incident leading to Mr. Abrams' death and indemnification with respect to the same incident. In addition, Mr. Haught asserted that U.S. Fidelity breached a duty of good faith and fair dealing in failing to defend him in the wrongful death action and by denying him coverage. Mr. Haught filed a Civ.R. 41(A)(1) notice of dismissal of Mutual of Omaha without prejudice. Nonetheless, when Mr. Haught amended his complaint to add Ms. Abrams as a necessary party, he included a claim against Mutual of Omaha.

{¶4} U.S. Fidelity and St. Paul both moved for summary judgment and opposed Mr. Haught's motion for partial summary judgment. Mr. Haught likewise responded in opposition to U.S. Fidelity's and St. Paul's motion. Ms. Abrams also filed responses to the various summary judgment motions. Ultimately, the trial court concluded that "there is no coverage under the policies at issue here." Thus, it granted summary judgment to U.S. Fidelity and St. Paul on Mr. Haught's amended complaint for declaratory judgment and denied Mr. Haught's motion for partial summary judgment. Mr. Haught appealed, and this Court dismissed the appeal as the claim against Mutual of Omaha remained outstanding and the trial court's entry failed to use Civ.R. 54(B) language. Mr. Haught, thereafter, dismissed his claim against Mutual of Omaha, and the trial court issued another entry reiterating its summary judgment ruling and including

Civ.R. 54(B) language. Mr. Haught appealed the judgment as to both U.S. Fidelity and St. Paul, but the parties have agreed to dismiss the appeal as to St. Paul. Mr. Haught thus appeals the judgment as to U.S. Fidelity, raising a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR I

"The trial court committed reversible error in granting Summary Judgment in favor of the Appellees."

{¶5} Mr. Haught asserts that the trial court erred in granting summary judgment to U.S. Fidelity as he is entitled to coverage under the policy, that the incident that led to Mr. Abrams' death occurred within the scope of the policy, and that no exclusions are applicable.

{¶6} We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105. "Pursuant to Civ.R. 56(C), summary judgment is appropriately rendered when '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.'" *Turner v. Turner* (1993), 67 Ohio St.3d 337, 339-340, quoting *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327.

{¶7} On a motion for summary judgment, the moving party has the burden of demonstrating that no genuine issues of material fact exist. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292. The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact does exist. Id. at 293.

"An insurance policy is a contract whose interpretation is a matter of law. Contract terms are to be given their plain and ordinary meaning. If provisions are susceptible of more than one interpretation, they will be construed strictly against

the insurer and liberally in favor of the insured. Additionally, an exclusion in an insurance policy will be interpreted as applying only to that which is clearly intended to be excluded." (Internal citations and quotations omitted.) *Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, at ¶6.

"It is undisputed that one seeking to recover on an insurance policy generally has the burden of proving a loss and demonstrating coverage under the policy." (Internal quotations and citations omitted.) Id. at ¶19.

{¶8} Despite the variety of arguments made on appeal, in granting summary judgment to U.S. Fidelity, the trial court only determined Mr. Haught was not entitled to coverage because:

"when [Mr.] Haught left his team to involve himself in the dispute, even if with the intent to prevent a fight, to disperse the crowd, or protect a team member, his actions constituted an abandonment and departure from his coaching duties. Therefore, the Court must find that [Mr.] Haught was not acting in the capacity as the Brownlee team's coach when he injured [Mr.] Abrams and therefore was not covered under the [U.S. Fidelity] Policy as set forth [in U.S. Fidelity's] Change Endorsement 2."

{¶9} The insurance policy at issue is a commercial insurance policy with the original named insured being United States Specialty Sports Association, Inc. The policy provides that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' * * * to which this insurance applies." "This insurance applies to 'bodily injury' * * * only if * * * [t]he bodily injury * * * is caused by an 'occurrence' that takes place in the 'coverage territory'; [t]he 'bodily injury' * * * occurs during the policy period;" and prior to the policy period the insured did not know the bodily injury had occurred. Bodily injury is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Coverage territory includes the United States of America, Puerto Rico and Canada. Occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy excludes bodily injury "expected or intended from the standpoint of the insured." However, the exclusion does

not apply to bodily injury "resulting from the use of reasonable force to protect persons or property."

{¶10}  Change Endorsement No. 2 provides the following:

"As of the effective date hereof, it is hereby understood and agreed that Form CL/IL 108(06/94M) – COMMERCIAL INSURANCE POLICY – COMMON POLICY DECLARATIONS, NAMED INSURED AND MAILING ADDRESS is amended to include the following:

"* * *

"[(1)]USSSA member teams and leagues (including their team members, managers, coaches, assistants, volunteers, and sponsors, but only while acting in their capacity as such) that have had their applications approved by American Specialty Insurance Services, Inc., on behalf of [U.S. Fidelity], and have paid the appropriate premium.  Coverage includes amateur play and practice in the insured sport, including fundraisers, banquets, award ceremonies, and team meetings.

"[(2)]Players, coaches, batboys/girls, ballboys/girls, team/tournament sponsors, scorekeepers, and volunteers of tournaments, that have had their applications approved by American Specialty Insurance Services, Inc., on behalf of [U.S. Fidelity], and have paid the appropriate premium, but only with respect to USSSA sanctioned tournaments."

Mr. Haught attached to the amended complaint a "CERTIFICATE OF LIABILITY INSURANCE" which provides that "Brownlee['s] Arsenal" is a named insured under the policy. In addition, Mr. Haught attached a payment confirmation form demonstrating that he paid the premium to insure Brownlee's Arsenal under the policy.

{¶11}  Change Endorsement No. 2 thus expands the list of who is a named insured. Based upon paragraph one, the certificate of liability insurance, and the proof of payment, Mr. Haught is only a named insured when he is acting in his capacity as a coach.  Thus, the trial court essentially held that Mr. Haught was not a named insured as it held he was not acting in his capacity as a coach when he involved himself in the argument that led to Mr. Abrams' death.

{¶12}  On appeal, Mr. Haught asserts that he is an insured, and thus entitled to coverage, under both paragraphs one and two of the Change Endorsement No. 2.  However, Mr. Haught

did not assert that he was an insured based upon paragraph two in the trial court, and accordingly has forfeited this argument. See *Robert v. Reyes,* 9th Dist. No. 10CA009821, 2011-Ohio-2608, at ¶¶8-9; *Chaparro-Delvalle v. TSH Real Estate Invest. Co, Inc.*, 9th Dist. No. 05CA008712, 2006-Ohio-925, at ¶8 ("Appellants failed to raise these issues before the trial court and, therefore, have [forfeited] the right to raise the issues on appeal.").

**{¶13}** Nonetheless, even if Mr. Haught had not forfeited the argument, he did not submit Civ.R. 56 material to support his assertion that *he* had an application approved and paid a premium for coverage for himself. Thus, there was no evidence that he is an insured as contemplated by paragraph two of Change Endorsement No. 2.

**{¶14}** Thus, we turn to determining whether Mr. Haught was acting in his capacity as a coach, as contemplated by paragraph one of Change Endorsement No. 2, when he involved himself in the argument that led to Mr. Abrams' death.

**{¶15}** Unfortunately, the policy does not define what is meant by "acting in their capacity as such." Nonetheless, "[t]he mere absence of a definition in an insurance contract does not make the meaning of the term ambiguous." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108. "A court must give undefined words used in an insurance contract their plain and ordinary meaning." Id. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." (Internal quotations and citation omitted.) Id.

**{¶16}** Capacity is defined, inter alia, as a "duty, position, role[.]" Merriam-Webster's Collegiate Dictionary (11 Ed. 2005) 182. Thus, the issue to be determined is whether Mr. Haught was acting in his role as coach. The trial court concluded "when [Mr.] Haught left his team to involve himself in the dispute, even if with the intent to prevent a fight, to disperse the

crowd, or protect a team member, his actions constituted an abandonment and departure from his coaching duties." It appears that the trial court defined "capacity" to essentially mean the act of coaching. However, given that the policy does not state that Mr. Haught is only an insured when he is coaching, we believe the trial court's interpretation of the phrase acting in his capacity as a coach is too narrow and ignores the ordinary meaning of the word.

{¶17} Having defined "capacity[,]" we now turn to considering the factual circumstances that indicate whether one is acting within his or her capacity as a coach. Certainly, there are actions a coach could take during a tournament which would be considered acting outside his or her capacity as a coach. For example, a coach acting on his or her own personal interests would not be acting in his or her capacity as a coach, whereas a coach acting on behalf of the team's interests would be acting within his or her capacity as a coach. Thus, we conclude the appropriate issue is whether Mr. Haught was acting on behalf of his own personal interests or on behalf of the interests of the team.

{¶18} U.S. Fidelity points to a brief and unlabeled portion of what appears to be Mr. Haught's deposition in order to support its position that Mr. Haught was not acting in his capacity as a coach. In the relevant portion, when questioned, Mr. Haught agreed that his "role as head coach" began in pregame warm-ups and ended when the game was over and that at the time of the incident his "coaching responsibilities" had ended.

{¶19} In support of Mr. Haught's motion for summary judgment and in opposition to U.S. Fidelity's motion, he submitted his affidavit in which he averred that:

> "[(1) a]t the time of the formation of the crowd and argument, [he] was leading a post-game team meeting approximately 80 feet from the crowd[;] [(2) f]rom the team meeting, [he] saw someone raise a bat into the air and strike someone[;] [(3) he] did not enter the crowd until [the woman was struck] with the baseball bat[;] [and (4) that he] entered the crowd with the sole intent of disbursing the crowd,

helping to assist and protect [the woman who was struck], and to make sure no one else would be injured."

Further, Mr. Haught additionally testified in his deposition that he did not move toward the altercation until after his assistant coach ran towards the crowd. Mr. Haught agreed that he was responsible for the players until the team meeting was over and that he did not want any of his players to become involved in the altercation and so he wanted "to go over to try and break things up[.]"

{¶20} In light of the undisputed evidence concerning Mr. Haught's entrance into the crowd, we conclude that Mr. Haught was acting in his role as a coach within the meaning of the insurance policy. Here, given that the mêlée was occurring approximately eighty feet from where Mr. Haught was conducting a team meeting, that the argument grew heated and became violent, and that Mr. Haught's assistant coach left the team meeting and ran towards the fight, we conclude that Mr. Haught was acting within his capacity as a coach when he ran after his assistant coach and into the crowd. Mr. Haught's actions were not completely unconnected to his responsibilities as the coach of the team given the proximity of the fight, its escalation, and those involved in it. Thus, we conclude the trial court erred in its interpretation of the insurance policy. Further, as the trial court denied coverage solely upon this basis, and has not yet considered the remaining issues in the first instance, we remand the matter to the trial court for further consideration.

### III.

{¶21} In light of the foregoing, we sustain Mr. Haught's assignment of error and remand the matter to the Summit County Court of Common Pleas for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

 

 

EVE V. BELFANCE
FOR THE COURT

 

DICKINSON, J.
CONCURS

MOORE, J.
DISSENTS, SAYING:

{¶22} As I believe the trial court correctly determined there to be no genuine issue of material fact regarding coverage by United States Fidelity, I must respectfully dissent. The trial court based its decision on the fact that Mr. Haught, by his own words, was not acting as a coach

at the time he entered the fray that took the life of Mr. Abrams. While Haught's opinion of his status does not control the legal determination of whether he was "acting in the capacity" as a coach, it does provide some guidance in the analysis. His team was eighty feet away from the concession stand, far enough to usher the youth out of danger. Nothing in the record suggests the players were in danger as they were involved in their team meeting. Instead of moving the players away from the disturbance, Haught ran toward it, even accepting his stated reason of attempting to break up the fight. I believe the trial court was correct in deciding that his entry into the mêlée "constituted an abandonment and departure from his coaching duties." Accordingly, I would affirm the trial court's decision to grant summary judgment in favor of United States Fidelity.

APPEARANCES:

LAWRENCE J. SCANLON and MICHAEL J. ELLIOTT, Attorneys at Law, for Appellant.

CLIFFORD C. MASCH, Attorney at Law, for Appellee.

DAVID B. SPALDING, Attorney at Law, for Appellee.